UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------
                                       :

NORMAN POMALES,             :
                                         :       CASE NO. 1:08-cv-01054; 1:03-cr-00431-3
              Petitioner,       :
                                         :
vs.                                      :       OPINION & ORDER
                                         :       [Resolving 1:08-cv-01054 Doc. 1; Resolving
                                               1:03-cr-00431-3 Doc. 306-1]
UNITED STATES OF AMERICA,       :
                                         :
              Respondent.       :
                                         :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Petitioner Norman Pomales moves this Court to set aside, vacate, and correct his sentence under 28 U.S.C. § 2255, claiming ineffective assistance of counsel. [Doc. 306-1.][1] The United States responds saying that his Trial Counsel's performance did not "f[a]ll below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), and that Pomales cannot show prejudice, *id.* at 692. [Doc. 310-1.]

Magistrate Judge Baughman issued a Report and Recommendation recommending that this

---

[1] The Docket Entry citations in this Opinion and Order will refer to the criminal docket of United States v. Pomales, case number 1:03-cr-00431-3.  Petitioner Pomales has also filed a separate motion related to DEA Agent Lee Lucas's involvement in this case.  Specifically, Pomales asks this Court to appoint an attorney for him to aid in the investigation and development of legal arguments on Lee Lucas's alleged misconduct and any claims that Pomales may have because of the government's alleged failure to turn over information about Lucas. [Doc. 323-1 at 1.] Pomales asks for "all memos and other documents that discuss the credibility of drug Agent Lee Lucas." [Doc. 323-1 at 1.]

Magistrate Judge Baughman issued a separate Report and Recommendation on these issues, [Doc. 327,] and this Court will address them in a separate Opinion and Order.

Case No. 1:08-cv-01054; 1:03-cr-00431-3
Gwin, J.

Court deny Pomales's motion because trial counsel's performance was not constitutionally deficient and because Pomales cannot show prejudice. [Doc. 326.] Pomales objected to the Report and Recommendation. [Doc. 329.]

In resolving this motion, this Court must decide whether Pomales has shown a "reasonable probability," *Strickland*, 466 U.S. at 694, of prejudice when: (1) although Trial Counsel did not move to dismiss a juror, this Court later determined that the juror was unbiased; and (2) although Trial Counsel failed to investigate Pomales's capacity, this Court later stated that Pomales "ha[d] functioned in society," [Doc. 243 at 32-33.]

## I. Background Facts and Procedure

To give background to Pomales's petition, this Court will first describe the general progression of this case, and then describe the facts relevant to Pomales's ineffective assistance of counsel claims in more detail.

*I.A.    General Procedural Background*

On November 19, 2003, a grand jury returned a thirteen-count indictment against Norman Pomales and eight other defendants. The indictment charged Pomales in two counts: (1) conspiracy to possess with the intent to distribute more than 50 grams of cocain base ("crack") and/or more than 5 kilograms of cocain powder, violating 21 U.S.C. § 841(a)(1), (b)(1)(A) and § 846; and (2) using a telephone to facilitate a drug trafficking offense, violating 21 US.C. § 843(b). [Doc. 1.] Pomales pleaded not guilty on both counts.

On January 14, 2004, Pomales's original counsel (who had represented him at his arraignment and detention hearing) filed a motion to withdraw. [Doc. 98.] This Court granted that motion to withdraw and then appointed Pomales's Trial Counsel on February 3, 2004. This Trial

Case No. 1:08-cv-01054; 1:03-cr-00431-3
Gwin, J.

Counsel is the subject of this current motion seeking relief for ineffective assistance of counsel. [Doc. 125.] On February 25, 2004, less than one month after this Court appointed Trial Counsel, the trial began. [Doc. 153.]

After a three-day trial, on February 27, 2004, the jury found Pomales guilty on both counts. [Doc. 155.] On May 27, 2004, this Court sentenced Pomales to 360 months incarceration on the drug conspiracy count and 48 months incarceration on the telephone use count. [Docs. 223, 224.] Pomales appealed the conviction and his sentence. The Sixth Circuit affirmed his conviction but vacated the sentence, remanding his case for resentencing in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). *United States v. Cornell*, 162 Fed. Appx. 404 (6th Cir. 2006).

This Court re-sentenced Pomales on February 28, 2006 to 240 months incarceration on the drug conspiracy count and 48 months incarceration on the telephone use count. [Docs 270, 271.] Pomales appealed this resentencing. The Sixth Circuit then affirmed this Court's sentence. After losing on his direct appeal, Pomales brought this petition under § 2255 for ineffective assistance of counsel.

*I.B.    Ineffective Assistance of Counsel Claims*

Pomales petitions this Court for relief saying that his trial counsel's performance was constitutionally deficient because trial counsel (1) failed to move to strike a juror for cause because the juror had a previous connection with a government witness, and (2) failed to investigate information about Pomales's Social Security Income ("SSI") benefits, which would have, according to Pomales, shown him to be incompetent to stand trial. [Doc. 306-2 at 4-7.]

*I.B.1.    Failure to Seek Removal of a Juror for Cause*

Case No. 1:08-cv-01054; 1:03-cr-00431-3
Gwin, J.

During voir dire at the trial, Juror #8 indicated that he had previously known one of the government's trial witnesses, and initially indicated that he would be unable to be fair and impartial:

> Government:   Knowing slightly this witness, does that prevent you from being a fair and impartial juror in this case.
>
> Juror 8:       Probably does.

[Doc. 306-2 at 5.]

The government, seeing a potential for prejudice, moved this Court to dismiss Juror #8 for cause.  After the government moved to dismiss Juror #8, Pamales's Trial Counsel objected. According to Pomales, "[i]t is unclear whether this objection was an objection to the continued service of Juror Number 8 or an objection to the government's challenge for cause." [Doc. 306-2 at 4 n.1]

After the government moved for remove Juror #8, this Court questioned Juror #8 about a potential bias or prejudice:

> Court:         How does knowing [the government witness] – what effect does that have upon your ability to be fair in this case.
>
> Juror 8:       It wouldn't have no effect on me. I don't think.

[Doc. 306-2 at 5.]

Juror #8 remained on the panel that eventually found Pomales guilty.  Pomales says that his counsel's failure to move to dismiss this juror for cause was ineffective assistance of counsel.  *See Miller v. Webb*, 385 F.3d 666, 676-77 (6th Cir. 2004) ("When a venireperson expressly admits bias on *voir dire*, without a court response or follow-up, for counsel not to respond [to the statement of partiality] in turn is simply a failure to exercise the customary skill and diligence that a reasonably competent attorney would provide.") (citations and internal quotations omitted).

Case No. 1:08-cv-01054; 1:03-cr-00431-3
Gwin, J.

### I.B.2.  Failure to Investigate SSI Benefits

At some time in the month leading up to or during the trial, Trial Counsel became aware that Pomales's mother was receiving SSI benefits on his behalf for a learning disability. [Doc. 210 at 623, 629 (Pomales's sister agreeing that the "checks went to [her] mother" but saying the checks were received "[b]ecause of him, not for [the mother]").][2]

At trial, Trial Counsel sought to introduce "in rebuttal to [his] client receiving SSI" documents that evidenced his benefits. [Doc. 210 at 620.] Over an objection to the last-minute introduction of these documents, Trial Counsel stated that "[f]or the record . . . I just received [the documents] ten minutes ago." [Doc. 210 at 620.]

After trial, in connection with seeking a downward departure for diminished mental capacity, Trial Counsel moved this Court for an independent psychological examination "to provide th[e]

---

[2]  Pomales's sister, on examination from Trial Counsel, stated the following about these benefits:

Q.   Taking you back to the years when [Pomales] was attending school, did he have any type of disability?
A.   Yes.

Q.   What type of disability did he have?
A.   A learning disability.
. . .
Q.   How do you know that?
A.   Because I lived with him and they was receiving Social Security for him?

Q.   Your home received Social Security for him?
A.   Yes.
. . .
Q.   I asked you and your mom to look for documents regarding SSI?
A.   Yes.

Q.   You came this morning and provided me with some documents?
A.   Yes.

[Doc. 210 at 622-24.]

Case No. 1:08-cv-01054; 1:03-cr-00431-3
Gwin, J.

Court with an accurate and complete record with regards to Defendant's mental capacity." [Doc.

306-3.] The Court did not grant the motion for an independent examination, but instead allowed trial

counsel 10 additional days to provide medical records evidencing the need for an independent

examination. [Doc. 212.]

In his petition for relief before this Court, Pomales attached several medical reports. Pomales

says that these reports show that he may have been either incompetent to stand trial, or, could have

used a diminished capacity defense at trial. [Doc. 306-2 at 8.]

The first report dates from May 4, 1991. [Doc. 306-3 at 9.] This report was conducted when

Pomales was in fourth grade. The report concluded that he did "meet the eligibility criteria for

special education services as defined by the Ohio Department of Education's *Rules for the Education

of Handicapped Children*." [Doc. 306-3 at 9.] The report noted that Pomales's general intelligence

was "in the low average range." [Doc. 306-2 at 14.]

Later that year, on August 29, 1991, Dr. Herschel J. Pockholtz conducted a psychological

report on Pomales on referral from the Bureau of Disability Determination. [Doc. 306-3 at 4.] This

report indicated that Pomales's "overall performance f[ell] within the mild mentally retarded range

of functioning and is highly indicative of significant problems in all areas of assessment as a result

of his significant characterological issues and behavioral problems." [Doc. 306-3 at 7.] In

summarizing the report, Dr. Pickholtz concluded that Pomales "will require an extensive amount of

individual counseling along with special educational placement as a result of his behavioral

difficulties *and not due to organic or retardation considerations*." [Doc. 306-3 at 8 (emphasis

added).]

Pomales also submitted a report from six years later, conducted by the Center for Effective

Case No. 1:08-cv-01054; 1:03-cr-00431-3
Gwin, J.

Living, Inc. and dated October 13, 1997.  This report was a Parent Clinical Interview and included

no input or examination of Pomales because, after learning that the clinic would not see him

immediately, he "became very irate and stormed out of the office." [Doc. 306-3 at 1.] This report

indicated that Pomales was "an 18 year old male who [wa]s receiving SSI benefits on the basis of

his disruptive behavior disorder including: Conduct Disorder." [Doc. 306-3 at 3.]

Trial Counsel has stated that, "[a]t no point in time did [Pomales's previous attorneys], or

Mr. Pomales bring to my attention the possibility of needing to refer Mr. Pomales for a Competency

Hearing.  My visits with [him] did not indicate the need for a referral for an examination to

determine his competency to stand trial." [Doc. 310-2.][3/]

Pomales says that Trial Counsel's failure to investigate his medical records denied him

effective assistance of counsel because, with investigation, Trial Counsel could have asked this Court

for a competency hearing, 18 U.S.C. § 4241, and could have asserted a diminished capacity defense

to negate the specific intent required for his conviction.

After describing the legal standard for an ineffective assistance of counsel claim, this Court

will discuss Pomales's failure to strike claim and failure to investigate claim.

## II.  Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, Petitioner must show that his counsel's

performance was deficient and that the deficient performance prejudiced the defense so as to render

the trial unfair and the result unreliable. *Strickland,* 466 U.S. at 687; *Bigelow v. Williams,* 367 F.3d

562, 570 (6th Cir. 2004); *Mallett v. United States,* 334 F.3d 491, 497 (6th Cir. 2003), *cert. denied,*

---

[3/] After trial, Pomales filed a grievance against Trial Counsel with the Disciplinary Counsel in the Supreme
Court of Ohio.  Trial Counsel made the above-quoted statement in response to an inquiry about this grievance.

Case No. 1:08-cv-01054; 1:03-cr-00431-3
Gwin, J.

540 U.S. 1133 (2004); *Bugh v. Mitchell,* 329 F.3d 496, 513-14 (6th Cir.), *cert. denied,* 540 U.S. 930 (2003).  The petitioner has the burden of demonstrating prejudice.  *Mallett*, 334 U.S. at 497.

A reviewing court's scrutiny of counsel's performance is highly deferential.  *Strickland,* 466 U.S. at 689.  Indeed, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690; *accord Bigelow,* 367 F.3d at 570; *Mallett,* 334 F.3d at 497.

Nonetheless, the court must make an independent judicial evaluation of counsel's performance and determine whether counsel acted reasonably under all the circumstances. *Roe v. Flores-Ortega,* 528 U.S. 470, 481 (2000) ("the relevant question is not whether counsel's choices were strategic, but whether they were reasonable").  The court's position in *Strickland* emphasizes that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigations." 466 U.S. at 690.

In  assessing the second prong of the *Strickland* test, whether the deficient performance prejudiced the defense, a court must determine whether "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. This requires a finding beyond a mere showing that "the errors had some conceivable effect on the outcome of the proceeding, because virtually every act or omission of counsel would meet that test." *Williams,* 529 U.S. at 394 (citing *Strickland,* 466 U.S. at 693).

In resolving an ineffective assistance of counsel claim, a court does not need to determine both prongs of the *Strickland* test: "If it is easier to dispose of an ineffectiveness claim on the ground

Case No. 1:08-cv-01054; 1:03-cr-00431-3
Gwin, J.

of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

### III.  Failure to Strike Juror Claim

"Pursuant to the Sixth and Fourteenth Amendments, a criminal defendant is guaranteed the right to an impartial and unbiased jury." *Miller*, 395 F.3d at 672 (citing *Morgan v. Illinois*, 504 U.S. 719, 727 (1992)).  To make out an ineffective assistance of counsel claim that is based on trial counsel's failure to strike a biased juror, the petitioner "must show that the juror was actually biased." *Id.* at 674 (citations omitted).

A juror does not need to be "totally ignorant of the facts and issues involved in a case," and "it is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* at 673 (citations omitted).

Pomales's petition fails on the failure to strike grounds for two reasons.  First, it is unclear from the record that Trial Counsel actually failed to object to the continued service of Juror #8.  Second, and more important, Pomales cannot show prejudice under *Strickland* because this Court and the Court of Appeals for the Sixth Circuit found that Juror #8 could fairly serve.

When this matter was on direct appeal, the Sixth Circuit addressed Juror #8's alleged bias:

> There is no evidence that Juror #8 was biased against Pomales as [the government witness] only testified against [a codefendant] and never mentioned Pomales. Further we find that Juror #8 did not display evidence of a closed mind concerning Pomales.  We find that the district court did not err in declining to remove Juror #8.

[Doc. 266 at 18-19.]

This Court agrees with its original assessment of Juror #8 and the Sixth Circuit's opinion affirming that assessment.  Accordingly, because Pomales cannot show that Juror #8 was bias, he cannot sufficiently show prejudice under *Strikland* on his failure to strike claim.

Case No. 1:08-cv-01054; 1:03-cr-00431-3
Gwin, J.

### IV.  Failure to Investigate

Pomales's failure to investigate claims are related to the diminished capacity defense and to his competency to stand trial.

"The diminished capacity defense is directly concerned with whether the defendant possessed the ability to attain the culpable state of mind which defines the crime [and] is available to negate the mens rea of a specific intent crime such as possession with intent to distribute."  *Mallett*, 334 F.3d at 495 (citations and internal quotations omitted).

"A criminal defendant may not be tried unless he is competent."  *Id.* at 494 (citing *Godinez v. Moran*, 509 U.S. 389, 396 (1993)).  The Supreme Court has held that the test for competence is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as functional understanding of the proceedings against him."  *Dusky v. United States*, 362 U.S. 402, 402 (1960).

The procedure for determining a defendant's competency is set out in 18 U.S.C. § 4241(a). Under § 4241(a), if a court has "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," the court should order a hearing to determine competency.  28 U.S.C. § 4241(a).

To succeed on this failure to investigate claim, Pomales must "demonstrate a reasonable probability that the court would have found him incompetent."  *Mallett*, 334 F.3d at 497.  In *Mallett*, the Sixth Circuit reviewed the district court's denial of a § 2255 petition alleging ineffective assistance of counsel for failure to investigate competency and a diminished capacity defense.  *Id.*

-10-

Case No. 1:08-cv-01054; 1:03-cr-00431-3
Gwin, J.

at 497-98.

There, petitioner had "sustained a severe brain injury . . . when he was struck by a car while riding a motorcycle." *Id.* at 493-94.  In attempting to show that the district court likely would have found him incompetent, the petitioner pointed to a psychologist's report saying that petitioner "was a man with limited intelligence and impaired cognitive function, who c[ould not] integrate information effectively." *Id.* at 494.

In affirming the district court's denial of the § 2255 petition, the Court of Appeals noted that: (1) "nothing in [the] report indicates that [petitioner] was incompetent to stand trial," and (2) "after observing [petitioner] throughout the proceedings, the district court determined that [petitioner] was indeed competent to stand trial." *Id.* at 497.  The *Mallett* court additionally found that the "report d[id] not suggest that [petitioner] was unable to form the specific intent to distribute drugs." *Id.* at 498.

Here, the evidence on competency to stand trial is even weaker than that in *Mallett*.  The reports that Pomales has directed this Court to do not indicate a reasonable probability that this Court would have found him incompetent to stand trial.  The May 4, 1991 report indicated that Pomales general intelligence was "in the low average range." [Doc. 306-3 at 14.] That report also indicated that Pomales's achievement on test scores was "weaker than [his] ability score." [Doc. 306-3 at 12.] A second report from August 29, 1991, indicated that Pomales needed special education placement. But his behavioral difficulties, and not any "organic or retardation considerations," caused this need. [Doc. 306-3 at 8.] A third report, from October 13, 1997, which was completed without any actual examination of Pomales indicated that he was receiving the SSI benefits for a "Conduct Disorder." [Doc. 306-3 at 3.]

Case No. 1:08-cv-01054; 1:03-cr-00431-3
Gwin, J.

As in *Mallett*, nothing in the reports submitted to this Court indicate that Pomales was unable to form the specific intent necessary to distribute drugs.  Pomales has failed to show a reasonable probability that he would have had a diminished capacity defense.

Additionally, at sentencing, this Court indicated that Pomales was competent: "There are a number of matters in the presentence report that suggests that your client has functioned in society. He has never received mental health treatment . . . ; never been prescribed medication for that, has been self-employed as a construction worker, and has worked as a subcontractor." [Doc. 243 at 32-33.]

Based on the materials that Pomales has submitted in connection with his § 2255 motion, and based on this Court's assessment of Pomales at sentencing, this Court holds that Pomales has failed to show a reasonable probability that the result here would have been different.  *See Strickland*, 466 U.S. at 694.

### V.  Conclusion

Because Pomales has failed to make a sufficient showing of prejudice, this Court **DENIES** his motion under § 2255.

IT IS SO ORDERED.


Dated: June 15, 2009                              s/          *James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE